NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| **RARITAN BAY FEDERAL CREDIT UNION,** | **Civil Action No. 09-1512 (FLW)** |
| **Plaintiff,** | |
| **v.** | **MEMORANDUM OPINION** |
| **CUMIS INSURANCE SOCIETY, INC.,** | |
| **Defendant.** | |

**BONGIOVANNI, United States Magistrate Judge**

This matter comes before the Court upon motion by Defendant CUMIS Insurance

Society, Inc. ("CUMIS") for a protective order pursuant to FED.R.CIV.P. 26(c) and 45(c)(3) and

upon cross-motion by Plaintiff Raritan Bay Federal Credit Union ("Raritan Bay") for an Order

permitting it to file an Amended Complaint.  Both CUMIS's motion and Raritan Bay's cross-

motion have been opposed.  The Court has reviewed all arguments made in support of and in

opposition to both motions and considers same without oral argument pursuant to FED.R.CIV.P.

78.  For the reasons set forth more fully below, CUMIS's motion is granted in part and denied in

part, and Raritan Bay's cross-motion is granted in part and denied in part.

## I.      Background

This matter involves a contract dispute regarding a Credit Union Bond (the "Bond")

issued by CUMIS to Raritan Bay.  The Bond protected Raritan Bay against, *inter alia*, employee

dishonesty and faithful performance on the part of its employees and directors.  (Compl. ¶¶ 5,

20).  At issue in this lawsuit are the following two provisions of the Bond, which state:

A.      Employee or Director Dishonesty

We will pay you for your loss resulting directly from dishonest acts committed by an "employee" or "director," acting alone or in collusion with others.

Such dishonest acts must be committed by the "employee" or "director" with the manifest intent to:

a.      Cause you to sustain such loss; or
b.      Obtain an improper financial benefit for the "employee," "director," or for any other person or entity.

However, if some or all of your loss resulted directly or indirectly from a "loan" or "trade," that portion of the loss is not covered unless you establish that the portion of the loss involving a "loan" or "trade" resulted directly from dishonest acts committed by the "employee" or "director," acting alone or in collusion with others, with the manifest intent to:

1)      Cause you to sustain such loss; and
2)      Obtain an improper financial benefit for the "employee" or "director," or a financial benefit for any other person or entity.

As used in this coverage, an improper financial benefit does not include any employment benefits received in the course of employment including salaries, commissions, fees, bonuses, promotions, awards, profit sharing, business entertainment or pensions.

***

J.      Faithful Performance – Enhanced

We will pay you for your loss resulting directly from a named "employee's" "failure to faithfully perform his/her trust."

The Application Of Realized Earning In Loan Losses Condition does not apply to this coverage.

2

"Failure to faithfully perform his/her trust" is defined as:

"Failure to faithfully perform his/her trust" means acting in conscious disregard of your established and enforced shared, deposit or lending policies.

"Failure to faithfully perform his/her trust" does not mean:

a.   Negligence, mistakes or oversights; or
b.   Acts or omissions resulting from inadequate training; or
c.   Unintentional violation of laws or regulations; or
d.   Unintentional violation of your polices or procedures; or
e.   Acts or omissions known to, acquiesced in, or ratified by your Board of Directors; or
f.   Acts of an "employee" for which you could have made claim under Employee or Director Dishonesty Coverage.

In or about 2005, Raritan Bay initiated a program known as an "Indirect Lending Policy" (the "Program"), the stated purposed of which was to "supply the same sensible and sound loan opportunities . . . as we do for our established members and to create commerce that allows the credit union to remain competitive in the market place." (Compl. at ¶¶ 6, 7 (internal quotation marks omitted)). The Program was made available to qualified automotive dealerships. (*Id*. ¶ 8) Approval of loans under the Program was based on Raritan Bay's Federal Credit Union Consumer Loan Policy (the "Consumer Loan Policy"), a document incorporated into the Indirect Loan Program and overseen by Raritan Bay's management and board of directors. (*Id*. ¶9, 10).

Renee Cicero ("Cicero"), a former employee of Raritan Bay became "Indirect Loan Manager" for Raritan Bay on February 12, 2005. (*Id*. ¶ 13). As Indirect Loan Manager, Cicero had the authority to approve loans in accordance with the Consumer Loan Policy and Program. (*Id*. ¶ 14). Raritan Bay alleges that Cicero both (1) consciously disregarded the Consumer Loan

3

Policy and Program, causing Raritan Bay to suffer losses as a result of loan defaults; and (2) purposefully engaged in dishonest acts, including, but not limited to, obtaining improper benefits in the approval of loans, while knowing and intending that Raritan Bay would suffer losses as a result of loan defaults. (*Id.* ¶¶ 15, 16).

Raritan Bay claims that Cicero's alleged acts and the losses suffered therefrom are covered by Section A (Employee or Director Dishonesty) and Section J (Faithful Performance – Enhanced) of the Bond. (*Id.* ¶ 21). CUMIS, however, has denied coverage under the Bond. In light of this denial, Raritan Bay initiated the instant lawsuit against CUMIS. In its original Complaint, Raritan Bay sought a declaration that it was entitled to insurance coverage under the Bond as well as damages for breach of contract and breach of the duty of good faith and fair dealing. (*Id.* ¶¶ 23-28, 30-33, 35-40).

On July 22, 2009, the District Court dismissed Raritan Bay's claim that CUMIS breached its duty of good faith and fair dealing in denying coverage under the Bond.[1] In so doing, the District Court found that Raritan Bay's allegations of bad faith did not raise its right to relief above the speculative level as required by *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) because Raritan Bay failed to allege sufficient facts to establish that CUMIS was recklessly indifferent in denying Raritan Bay's claim. (July 22, 2009 Op. at 6-7). This dismissal was specifically made without prejudice and the District Court noted

---

[1]The District Court also struck Raritan Bay's requests for punitive damages and attorneys fees in Counts One (Declaratory Judgment) and Two (Breach of Contract) of the Complaint. (*Id.* at 7, 10). The Court notes that despite the fact that these requests have been stricken, Raritan Bay includes requests for punitive damages and attorneys fees in Counts One (Declaratory Judgment) and Two (Breach of Contract) of its proposed Amended Complaint. To the extent Raritan Bay's cross-motion to amend is granted the requests for punitive damages and attorneys fees found in Counts One and Two of the proposed Amended Complaint are stricken.

4

that Raritan Bay could "move to amend its Complaint at any time during discovery if it discovers facts sufficient to allege bad faith." (*Id*. at 7).

After Raritan Bay's bad faith allegations were dismissed and before any motion to amend was made, Raritan Bay sought to obtain certain discovery from CUMIS.  CUMIS objected claiming that the discovery sought by Raritan Bay was not relevant to Raritan Bay's breach of contract claim but instead represented a fishing expedition by which Raritan Bay sought to impermissibly obtain discovery related to its dismissed bad faith claim so that that claim could be restored.  CUMIS also argued that certain of the discovery sought by Raritan Bay was protected by the attorney-client privilege and work product doctrine.  As a result, CUMIS filed the instant motion for a protective order:

- precluding [Raritan Bay] from conducting discovery concerning: (i) the sales and marketing of the Bond; (ii) general risk management and 'best practices' advice offered by CUMIS to credit unions; or (iii) interpretations of the Bond through discovery of other unrelated claim files;

- precluding [Raritan Bay] from taking the deposition[] of Francis, a present employee of CUNA Mutual Insurance Society, by striking the notice of his deposition;

- precluding [Raritan Bay] from taking the deposition[] of Hendery, a former employee of CUNA Mutual Insurance Society, by quashing his subpoena;

- limiting the scope of the depositions of third parties, the Benton Investigators, to the areas of their investigation which are not subject to the attorney-client privilege or work product doctrine; and

- quashing the portion of the subpoena to the Benton Investigators which seeks the production of the sections of their files which are subject to claims of attorney-client privilege or work product doctrine including its communications with CUMIS' counsel and its notes and summaries of their interviews of former [Raritan Bay] employees, Renee Cicero ("Cicero"), Edward Sweeney ("Sweeney"), Thomas O'Shea ("O'Shea") and Donna Dwyer ("Dwyer").

(CUMIS Br. at 2). In response, Raritan Bay both opposed CUMIS's motion and filed a cross-motion to amend its Complaint in order to reassert its claim that CUMIS violated its duty of good faith and fair dealing in denying coverage under the Bond.

## II.     Analysis

Because a decision on Raritan Bay's cross-motion to amend its Complaint may affect the scope of permissible discovery, the Court shall first consider whether Raritan Bay should be permitted to amend its Complaint to reassert a bad faith claim. The Court shall then consider whether a protective order is warranted with respect to any of the challenged categories of information.

### A.     Motions to Amend the Pleadings

According to FED.R.CIV.P. 15(a), leave to amend the pleadings is generally given freely. *See Foman v. Davis,* 371 U.S. 178, 182 (1962); *Alvin v. Suzuki*, 227 F.3d 107, 121 (3d Cir. 2000). Nevertheless, the Court may deny a motion to amend where there is "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of the amendment." *Id.* However, where there is an absence of undue delay, bad faith, prejudice or futility, a motion for leave to amend a pleading should be

6

liberally granted.  *Long v. Wilson*, 393 F.3d 390, 400 (3d Cir. 2004).  Here, CUMIS opposes

Raritan Bay's proposed amendments on futility grounds and for undue delay and bad faith.  The

Court examines these arguments in turn below.

      **1.**      **Futility**

A proposed amendment is appropriately denied where it is futile.  An amendment is futile

if it "is frivolous or advances a claim or defense that is legally insufficient on its face."  *Harrison*

*Beverage Co. v. Dribeck Imp., Inc.,*, 133 F.R.D. 463, 468 (D.N.J. 1990) (internal quotation marks

and citations omitted).  In determining whether an amendment is "insufficient on its face," the

Court employs the Rule 12(b)(6) motion to dismiss standard (*see Alvin*, 227 F.3d at 121) and

considers only the pleading, exhibits attached to the pleading, matters of public record and

undisputedly authentic documents if the party's claims are based upon same.  *See Pension*

*Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993).

When considering whether a pleading would survive a Rule 12(b)(6) motion, the Court

must accept all facts alleged in the pleading as true and draw all reasonable inferences in favor of

the party asserting them.  *Lum v. Bank of Am.*, 361 F.3d 217, 223 (3d Cir. 2004).  "[D]ismissal is

appropriate only if, accepting all of the facts alleged in the [pleading] as true, the p[arty] has

failed to plead 'enough facts to state a claim to relief that is plausible on its face[.]'" *Duran v.*

*Equifirst Corp.*, Civil Action No. 2:09-cv-03856, 2010 WL 918444, *2 (D.N.J. March 12, 2010)

(quoting *Twombly*, 550 U.S. at 570).  In other words, the facts alleged must be sufficient to

"allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged."  *Iqbal*, 129 S.Ct. at 1949. While a pleading does not need to contain "detailed factual

allegations," a party's "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires

more than labels and conclusions, and a formulaic recitation of the elements of a cause of action

will not do[.]" *Twombly*, 550 U.S. at 555 (citation omitted).  Thus, the "[f]actual allegations

must be enough to raise a right to relief above the speculative level."  *Id.*

 As the District Court previously noted, "[p]ursuant to New Jersey law, to maintain a

claim for bad faith a Plaintiff must 'show the absence of a reasonable basis for denying benefits

of the policy and the defendant's knowledge or reckless disregard of the lack of a reasonable

basis for denying the claim.' Pickett v. Lloyd's, 131 N.J. 457, 473 (1993).  Further, while 'the

lack of a reasonable basis may be inferred and imputed to an insurance company,' there must be

allegations of reckless indifference to facts or to proofs submitted by the insured.  Id." (July 22,

2009 Op. at 6).  Raritan Bay's original bad faith claim was dismissed because Raritan Bay did

not allege sufficient facts to establish that CUMIS was recklessly indifferent in denying coverage

under Sections A and J of the Bond.  In its proposed Amended Complaint, Raritan Bay seeks to

add twenty-nine allegations to support its claim that CUMIS acted in bad faith.  (*See* Proposed

Amended Compl. ¶¶ 22-50).  The essence of these allegations is that CUMIS acted in bad faith

for the following three reasons:  First, CUMIS, after deciding in the summer of 2008 to deny

Raritan Bay coverage under the Bond and without informing Raritan Bay of this decision,

engaged in a sham investigation, the purpose of which was not to obtain information to enable it

to make a good faith coverage decision regarding Raritan Bay's claim, but instead was to enable

it to obtain information to use against Raritan Bay in future litigation.  Second, CUMIS, which

helped create Raritan Bay's lending policies and the resulting business climate within which

Raritan Bay operated, improperly relied on the vagueness of the same lending policies it helped

to create in denying coverage.  Third, CUMIS never advised Raritan Bay regarding why Raritan

Bay's Section A claim was denied but has inappropriately left Raritan Bay to speculate as to the reasons for the denial of coverage.

CUMIS argues that Raritan Bay's proposed amendments are futile.  With respect to Raritan Bay's allegations that CUMIS engaged in a sham investigation, CUMIS argues that Raritan Bay's claim is meritless as the law does not require an insurer investigating an insured's claim for coverage to advise the insured if facts weighing against coverage emerge or to cease its investigation after such facts emerge even if the investigation is incomplete.  Instead, CUMIS argues that the opposite is true and that "the case law is replete with claims for breach of the duty of good faith arising from an insurer's failure to adequately conduct a complete investigation into all of the relevant information." (CUMIS Reply Br. at 14).  In addition, CUMIS claims that according to the terms of the Bond, it had the right to "examine and audit" Raritan Bay's materials and interview Raritan Bay's employees and directors "*at any time*."  (*Id*. at 15 (internal quotation marks and citations omitted).  As such, CUMIS argues that Raritan Bay cannot claim that it was obligated to cease its investigations as soon as it discovered facts that weighed against coverage.  Moreover, CUMIS contends that Raritan Bay has not established facts showing that CUMIS's interviews of Cicero, O'Shea and Sweeney were "unrelated to and irrelevant to CUMIS making a decision on its claim." (*Id*. at 16).  Consequently, CUMIS argues that Raritan Bay's bad faith allegations concerning CUMIS's alleged sham investigation do not raise Raritan Bay's right to relief above the speculative level.

CUMIS similarly takes issue with Raritan Bay's allegations that CUMIS acted in bad faith when it relied on the vagueness of Raritan Bay's lending policies as a reason for denying coverage under the Bond.  In this regard, CUMIS claims that "how and why [Raritan Bay]

adopted the lending policies at issue in this case" is a "collateral" matter that is "irrelevant to the issue of whether there is coverage under the Bond." (*Id*. at 12-13). Indeed, CUMIS claims that "[t]he source of [Raritan Bay's] lending policies is simply irrelevant to the question of whether Cicero 'consciously disregarded' [Raritan Bay's] policies and procedures[.]" (*Id*. at 17). CUMIS also argues that "this theory of bad faith is . . . factually infirm" because even if CUMIS helped to create the lending policies adopted by Raritan Bay, which CUMIS disputes, "[c]ontrary to [Raritan Bay's] argument, CUMIS did not deny the claim solely solely [sic] because of [Raritan Bay's] vague lending policies[.]" (*Id*. at 13). Instead, CUMIS contends that it denied coverage because Raritan Bay "failed to provide any support to establish any [sic] the three coverage requirements: (1) an established policy; (2) an enforced policy; and (3) consciously disregarded by Cicero." (*Id*.) CUMIS argues that Raritan Bay's theory of bad faith is thus futile because the failure to establish any one of the aforementioned requirements provides CUMIS with a basis to deny coverage.

Further, CUMIS argues that Raritan Bay's allegations that CUMIS acted in bad faith by failing to provide a denial letter regarding Raritan Bay's Section A claim are specious. In this regard, CUMIS notes that Raritan Bay initiated the instant lawsuit prior to submitting its Amended Proof of Loss in which it for the first time sought coverage under Section A of the Bond. Moreover, CUMIS argues that counsel for both Raritan Bay and CUMIS specifically agreed that the Amended Proof of Loss would be handled as part of this litigation. As a result, CUMIS argues that Raritan Bay "cannot now claim that CUMIS deliberately ignored or otherwise failed to conduct a timely investigation into its Amended Proof of Claim given the express agreement among counsel." (*Id*. at 17).

As stated above, in considering whether Raritan Bay's proposed amendments are futile, the Court applies the Rule 12(b)(6) motion to dismiss standard (*see Alvin*, 227 F.3d at 121).  As such, the Court accepts as true all facts alleged by Raritan Bay and limits its review to the factual allegations contained in Raritan Bay's proposed Amended Complaint, any exhibits attached thereto, matters of public record and undisputedly authentic documents that form the basis of Raritan Bay's claim.  *See Pension Benefit Guar. Corp.*, 998 F.2d at 1196.  Under this standard, the Court finds that Raritan Bay should be permitted to amend its Complaint to allege certain bad faith allegations.  Specifically, the Court finds that Raritan Bay's allegations that CUMIS acted in bad faith when it conducted a sham investigation and failed to advise Raritan Bay why its Section A claim was denied are not futile.

While the Court agrees with CUMIS that an insurer is not obligated to cease its investigation or inform an insured immediately upon learning any facts that weigh against providing coverage of an insured's claim, the Court finds that Raritan Bay's claim that CUMIS acted in bad faith by engaging in a sham investigation is not premised on such a theory.  Instead, Raritan Bay alleges that CUMIS acted in bad faith because it conducted a sham investigation after it had already decided that it would deny Raritan Bay's claim: "CUNA had decided in the Summer of 2008 that it would deny the claim and thereafter, conducted a sham investigation of the claim which was undertaken for the improper purpose of obtaining information from Raritan Bay to be used against Raritan Bay in litigation which might ensue."  (Proposed Amended Compl. ¶ 31).  Thus, Raritan Bay is not alleging that CUMIS conducted a sham investigation because it continued to investigate Raritan Bay's claim for coverage after it learned of facts that favored denying Raritan Bay's claim, but instead is alleging that CUMIS engaged in a sham

11

investigation because it continued to "investigate" Raritan Bay's claim after it had already

decided that it would deny same.  Whether CUMIS had actually decided to deny Raritan Bay's

claim for coverage in the Summer of 2008 is a fact question that the Court does not resolve at

this time.  Instead, at this juncture, the Court assumes that the facts alleged by Raritan Bay in its

proposed Amended Complaint are true.  Further, the Court finds that if CUMIS had in fact

decided to deny coverage in the Summer of 2008 and then, despite having made this decision,

continued to "investigate" Raritan Bay's claim, then CUMIS's investigation would support a bad

faith claim.  Consequently, the Court finds that Raritan Bay's allegations regarding the sham

investigation allegedly conducted by CUMIS (*see* Proposed Amended Compl. ¶¶ 22-37),[2] if true,

support a claim for bad faith and are not futile.

 Similarly, the Court finds that Raritan Bay's allegations that CUMIS acted in bad faith

when it failed to advise Raritan Bay as to the basis for its denial of Raritan Bay's Section A –

Employee Dishonesty claim (*see* Proposed Amended Compl. ¶¶ 47-50), when taken as true, are

not futile.  While CUMIS argues that there was an agreement between counsel that Raritan Bay's

Section A claim would be handled as part of this litigation and that, as a result, CUMIS's failure

to provide Raritan Bay with a letter explaining the reasons why CUMIS was denying coverage

under Section A cannot support Raritan Bay's claim of bad faith, the  Court finds that at this

---

[2]As with the fact issue of whether CUMIS had made a decision to deny coverage in the Summer of 2008, the Court assumes that the other facts alleged by Raritan Bay in support of this claim are true.  Thus, for example, the Court does not actually decide whether Raritan Bay knew that CUMIS was interviewing Raritan Bay's former employees.  The Court notes that while Raritan Bay alleges that it had no knowledge of these interviews, emails exist which suggest otherwise.  Nevertheless, in the context of Raritan Bay's cross-motion to amend, the Court does not consider the emails but, instead, accepts the facts as alleged by Raritan Bay to be true.  *See Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d at 1196.

stage of proceedings consideration of counsel's alleged agreement and the exact substance of same would be inappropriate; instead, the Court must accept as true the facts alleged by Raritan Bay. *See Pension Benefit Guar. Corp.*, 998 F.2d at 1196. Furthermore, the Court finds that, if true, Raritan Bay's allegations support a claim of bad faith.

In contrast to Raritan Bay's allegations concerning CUMIS's alleged sham investigation and CUMIS's failure to provide Raritan Bay with the reasons for its denial of coverage under Section A of the Bond, the Court finds that Raritan Bay's allegations that CUMIS cannot in good faith rely on the vagueness of Raritan Bay's lending policies as a basis for denying coverage (*see* Proposed Amended Compl. ¶¶ 38-46) do not support a claim that CUMIS acted in bad faith. As such, the Court finds that permitting Raritan Bay to amend its Complaint to add such allegations would be futile.

In order to state a claim for bad faith based on the denial of benefits under an insurance policy, a plaintiff must "show the absence of a reasonable basis for denying benefits of the policy and the defendant's knowledge or reckless disregard of the lack of a reasonable basis for denying the claim." *Pickett v. Lloyd's*, 131 N.J. at 473. Here, even assuming that it would be unreasonable for CUMIS to rely on the vagueness of Raritan Bay's lending policies as a basis for denying coverage, Raritan Bay's bad faith allegations fail because CUMIS did not rely solely on the vagueness of Raritan Bay's lending policies in denying Raritan Bay's claim for coverage. Instead, CUMIS determined that:

> Given the vagueness of [Raritan Bay's] policies, the discretion
> given to loan officers, and the lack of any meaningful enforcement
> of its lending policies, [Raritan Bay] has not established that Renee
> Cicero consciously disregarded [Raritan Bay's] lending policies.
> As such, [Raritan Bay] has not supported its claim that its loss
> resulted directly from Renee Cicero's failure to faithfully perform
> her trust.

(Proposed Amended Compl. ¶ 30 (quoting Oct. 7, 2008 Denial Letter) (internal quotation marks

omitted).  As is clear, the vagueness of Raritan Bay's lending policies was only one of several

bases relied upon by CUMIS in denying coverage.  Because a bad faith claim based on CUMIS's

denial of coverage can only be successful if Raritan Bay establishes the absence of a reasonable

basis for the denial as well as CUMIS's knowledge or reckless disregard of the lack of a

reasonable basis for the denial, the fact that other bases for the denial exist is fatal to Raritan

Bay's claim.  Raritan Bay's proposed Amended Complaint contains no allegations regarding

CUMIS's denial of coverage based on the discretion given to Raritan Bay's loan officers or

Raritan Bay's lack of any meaningful enforcement of its lending policies.  Absent any allegations

suggesting otherwise, both of these represent reasonable bases for CUMIS's denial of coverage

under the Bond.  Further, because reasonable bases for the denial exist, Raritan Bay's bad faith

allegations regarding the alleged vagueness of its loan policies do not raise its right to relief

above the speculative level.  As a result, Raritan Bay's proposed amendments concerning same

are denied as futile.

## 2.    Undue Delay and Bad Faith

While delay alone does not justify denying a motion to amend the pleadings, a motion

seeking leave to amend should be denied when the delay is undue.  *Cureton v. Nat'l Collegiate*

*Athletic Ass'n*, 252 F.3d 267, 273 (3d Cir. 2001).  Delay becomes undue when it places an

unwarranted and unfair burden on the court or non-moving party. *Id*. A determination of undue delay focuses "on the moving party's reasons for not amending sooner. *Lyon v. Goldstein*, Civil Action No. 04-3458 (MLC), 2006 WL 2352595, *4 (D.N.J. Aug. 15, 2006) (citing *USX Corp. v. Barnhart,* 395 F.3d 161, 168 (3d Cir.2004)). However, unless the delay at issue will prejudice the non-moving party, a movant does not need to establish a compelling reason for its delay. *See Heyl & Patterson Int'l, Inc. v. F. D. Rich Housing of Virgin Islands, Inc.*, 663 F.2d 419, 426 (3d Cir. 1981). Further, in examining bad faith, like undue delay, the Court looks at the moving party's reasons for not amending sooner. *Lyon*,  2006 WL 2352595, at *4.

CUMIS argues that Raritan Bay's proposed Amendment is the product of undue delay and bad faith because it "contains facts known to [Raritan Bay] for at least ten years but which were not pled in [Raritan Bay's] original Complaint that was filed on February 27, 2009." (CUMIS Reply Br. at 18). For example, CUMIS argues that the October 7, 2008 Denial Letter, which forms the basis of some of Rartian Bay's bad faith allegations, was known to Raritan Bay before Raritan Bay filed its original Complaint. As a result, CUMIS argues that Raritan Bay's attempt to raise these "stale allegation[s]' now "smacks of undue delay[.]" (*Id*. at 19). Similarly, CUMIS argues that Raritan Bay knew as early as 2007 and certainly by July 2008 that the Benton Investigators would be interviewing Raritan Bay's former employees and was also aware "that these interviews were part of the information considered by CUMIS" in denying Raritan Bay's claim. (*Id*. at 20). Consequently, CUMIS claims that Raritan Bay's decision to wait and not raise allegations concerning said interviews as a basis for its claim of bad faith in its original Complaint "is another example of its blatant delay and disregard." (*Id*.) Further, CUMIS argues that Raritan Bay's bad faith allegations arising out of CUMIS's alleged failure to decision

15

Raritan Bay's Section A – Employee Dishonesty claim are not only "disingenuous" given "the explicit agreement between counsel that this claim would be handled in this litigation" but are also the product of undue delay because "the facts which form the basis of this claim are the same facts which underlie [Raritan Bay's] claim for faithless performance" and, as such, this claim "creates no new basis for alleging a bad faith claim." (*Id.*)

With respect to the timing of the instant motion to amend, Raritan Bay claims that "[s]ince the Court's dismissal of the bad faith claim, without prejudice, the facts supporting bad faith have been learned or crystallized" and are included in the proposed Amended Complaint. (Raritan Bay Opp. Br. and Cross-Motion at 17). For example, Raritan Bay notes that "[s]ince the date of the dismissal, CUNA has not explained why the claim based on employee dishonesty was denied" and, in fact, as part of its motion for a protective order, has "admitted that it conducted an investigation of the claim not to decide the issue of coverage under the Bond but to prepare for 'the possibility of litigation.'" (*Id.* at 18). Indeed, Raritan Bay claims that only in reviewing CUMIS's motion for a protective order did it learn that CUMIS had determined in the Summer of 2008, that Raritan Bay's claim may not be covered. As such, Raritan Bay claims that its motion to amend is timely and brought in good faith. Raritan Bay also argues that CUMIS will not be prejudiced by its proposed amendments because fact discovery is "far from complete" and "[m]any of the facts are relevant to both the claim under the Bond and the claim for bad faith." (*Id.* at 17).

The Court finds that Raritan Bay's proposed amendments based on the alleged sham investigation conducted by CUMIS and CUMIS's failure to decision the Section A – Employee

Dishonesty claim are not the product of bad faith and do not result from undue delay.[3]  While over a year passed before Raritan Bay sought to reassert claims of bad faith, the Court finds that permitting Raritan Bay to amend at this time will not unfairly burden either CUMIS or the Court. In this regard, the Court notes that fact discovery is not complete and CUMIS will have the opportunity to fully defend against Raritan Bay's bad faith allegations.  While the Court acknowledges that by permitting the bad faith amendment, the scope of permissible discovery will undeniably be broadened, the Court finds that such an expansion will not prejudice or otherwise unfairly burden Raritan Bay.  Further, the Court notes that Raritan Bay claims that certain of the facts that form the basis of its bad faith claim, such as facts indicating that CUMIS had decided in the Summer of 2008 to deny Raritan Bay's claim, were not learned until CUMIS filed the instant motion for a protective order.  Under these circumstances, the Court finds no bad faith or undue delay.[4]

## B.    Protective Order

Pursuant to FED.R.CIV.P. 26(c), "[t]he court may for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense[.]"  Similarly, according to FED.R.CIV.P. 45(c) the Court must protect a subpoenaed person from

---

[3]The Court notes that there appears to be an agreement between counsel that Raritan Bay's Section A claim would be handled as part of this litigation.  Whether said agreement relieved CUMIS of its obligation to provide Raritan Bay with a denial letter similar to the October 7, 2008 Denial Letter is a fact question that the Court does not resolve at this time.

[4]In reaching this conclusion, the Court has not considered whether Raritan Bay's proposed bad faith allegations concerning the appropriateness of CUMIS relying on the vagueness of Raritan Bay's lending policies in denying Raritan Bay's claims under the Bond were made in bad faith or were the product of undue delay.  The Court has already determined that such allegations are futile and thus does not reach this issue.

"undue burden or expense" and, upon timely motion, must quash or modify a subpoena that

"requires disclosure of privileged or other protected matter, if no exception or waiver applies" or

"subjects a person to undue burden."  Rule 45(c)(3)(A)(iii) and (iv).  Here, as previously stated,

CUMIS seeks a protective order:

> • precluding [Raritan Bay] from conducting discovery concerning: (i) the sales and marketing of the Bond; (ii) general risk management and 'best practices' advice offered by CUMIS to credit unions; or (iii) interpretations of the Bond through discovery of other unrelated claim files;

> • precluding [Raritan Bay] from taking the deposition[] of Francis, a present employee of CUNA Mutual Insurance Society, by striking the notice of his deposition;

> • precluding [Raritan Bay] from taking the deposition[] of Hendery, a former employee of CUNA Mutual Insurance Society, by quashing his subpoena;

> • limiting the scope of the depositions of third parties, the Benton Investigators, to the areas of their investigation which are not subject to the attorney-client privilege or work product doctrine; and

> • quashing the portion of the subpoena to the Benton Investigators which seeks the production of the sections of their files which are subject to claims of attorney-client privilege or work product doctrine including its communications with CUMIS' counsel and its notes and summaries of their interviews of former [Raritan Bay] employees, Renee Cicero ("Cicero"), Edward Sweeney ("Sweeney"), Thomas O'Shea ("O'Shea") and Donna Dwyer ("Dwyer").

(CUMIS Br. at 2).  CUMIS seeks protection from compliance with the first three topics of

discovery, arguing that they are irrelevant to Raritan Bay's breach of contract claim and hence it

would be unduly burdensome if CUMIS was forced to respond to same.  In addition, CUMIS claims that discovery related to the Benton Investigators (i.e. the last two topics identified above) should be limited to protect documents and testimony subject to the attorney-client privilege and work product doctrine.  Each of these arguments is considered below in turn.

### 1.    Undue Burden

CUMIS objects to the first three areas of inquiry arguing that they are irrelevant to the "narrow issue . . . [of] whether [Raritan Bay's] claim under the Bond is covered under insuring clause A, the Bond's Employee Dishonesty coverage and/or under [i]nsuring clause J, the Bond's Faithful Performance coverage." (*Id*. at 8).  CUMIS claims that "discovery on the parties' coverage dispute is necessarily more limited than the discovery associated with a tort-like claim for bad faith." (*Id*. at 9).  CUMIS further notes that Raritan Bay's bad faith theory has been dismissed by the District Court and argues that it would be "unnecessarily burdensome and contrary to the letter and spirit of the Federal Rules of Civil Procedure" to permit Raritan Bay to pursue discovery on the dismissed bad faith claim.  (*Id*. at 10).  Raritan Bay disagrees that the information it seeks is irrelevant to its breach of contract claim.  However, Raritan Bay also argues that because it should be permitted to amend its Complaint to reassert a bad faith claim and because the discovery it seeks to obtain is relevant to said claim, the discovery should be permitted and CUMIS's motion for a protective order should be denied.

The Court agrees with CUMIS that information, whether in the form of documents or testimony, related to how the Bond was sold, marketed or advertised and the risk management and "best practices" advice offered by CUMIS to credit unions is not relevant to Raritan Bay's breach of contract claims.  The Court also finds that discovery related to how CUMIS

19

investigated and/or decisioned other claims is at best marginally relevant to Raritan Bay's breach of contract claims.  The Court further finds that this marginal relevance is outweighed by the burden that would be imposed on CUMIS if it were required to produce even limited discovery in this regard.  (*See* Pitek Aff., ¶ 7).  While the scope of discovery in federal litigation is undeniably broad – "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense . . . . Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence" – it does have its limits.  FED.R.CIV.P. 26(b).  The Court finds that absent a viable bad faith claim based on CUMIS's actual denial of coverage, the discovery sought by Raritan Bay falls outside of these limits.

The Court has determined that Raritan Bay should be permitted to amend its Complaint to assert bad faith claims based on CUMIS's alleged sham investigation and failure to decision Raritan Bay's Section A – Employee Dishonesty claim.  The Court, however, has denied Raritan Bay's motion to amend its Complaint to add a bad faith claim based on CUMIS's alleged improper reliance on the vagueness of Raritan Bay's lending policies in denying coverage under Section J of the Bond.  While the discovery sought by Raritan Bay may arguably be relevant to the latter bad faith claim, which the Court has determined is futile, the Court finds that it is not relevant to the first two.  As a result because the information sought by Raritan Bay is either not relevant or only marginally relevant to Raritan Bay's breach of contract and viable bad faith claims, the Court shall grant CUMIS's motion for a protective order and preclude Raritan Bay from obtaining discovery related to (1) how the Bond was sold, marketed or advertised; (2) the risk management and "best practices" advice offered by CUMIS to credit unions; and (3) how

CUMIS investigated and/or decisioned other claims.  Further because Raritan Bay seeks to

depose Francis and Hendery in order to obtain similar information, the Court shall preclude their

depositions and strike the notice of deposition served on Francis and quash the subpoena issued

to Hendery.

### 2.        Attorney-Client Privilege/Work Product

CUMIS seeks to prevent Raritan Bay from obtaining discovery, both oral and written,

from the Benton Investigators that CUMIS claims is protected by the attorney-client privilege

and work product doctrine.  For example, CUMIS seeks to protect the Benton Investigators

communications with CUMIS' counsel as well as their notes and summaries of their interviews

of Cicero, Sweeney, O'Shea and Dwyer.  As the party asserting the attorney-client privilege and

the work product doctrine, CUMIS bears the burden of proving that the materials at issue qualify

for protection from disclosure.   *Conoco, Inc. v. U.S. Dept. of Justice*, 687 F.2d 724, 730 (3d Cir.

1982); *In re Grand Jury Investigation*, 599 F.2d 1224, 1235 (3d Cir. 1979).

The attorney-client privilege protects confidential communications between a client and

his attorney and is one of the "oldest privileges . . . known to the common law." *Upjohn Co. v.

U.S.*, 449 U.S. 383, 389, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981).  Communications between an

attorney and third parties such as a client's agent or representative are also protected by the

attorney-client privilege where said communications are made in confidence for the purpose of

obtaining legal advice. *Louisiana Mun. Police Employees Retirement System v. Sealed Air

Corp.*, 253 F.R.D. 300, 311 (D.N.J. 2008) (citing *United States v. Kovel*, 396 F2d 918 (2d Cir.

1961)).

Like the attorney-client privilege, the work product doctrine protects certain material from discovery.  The work product doctrine, however, is "distinct from and broader than the attorney-client privilege."  *U.S. v. Nobles*, 422 U.S. 225, 238, 95 S.Ct. 2160, 45 L.Ed.2d 141 (1975).  It protects "documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative[.]"  FED.R.CIV.P. 26(b)(3).  In the Third Circuit, courts employ a two-part test to determine whether particular documents are protected by the work product doctrine.  First, courts examine whether the documents at issue were prepared in reasonable anticipation of litigation.  Second, courts determine whether the documents in question were prepared with the primary purpose of litigation.  *In re Gabapentin Patent Litig.*, 214 F.R.D. 178, 183-184 (D.N.J. 2003).

"The first prong of the inquiry is the 'reasonable anticipation' test[,]" which requires a party to "show that there existed 'an identifiable specific claim of impending litigation when the materials were prepared."  *Id*. at 183 (citations omitted).  "A 'remote prospect,' an 'inchoate possibility,' or a 'likely chance of litigation'" will not do.  *Id*. (quoting *Harper v. Auto-Owners Ins. Co.*, 138 F.R.D. 655, 660 (S.D. Ind. 1991)).  Further, "[t]he mere involvement of, consultation with, or investigation by an attorney does not, in itself, evidence the 'anticipation of litigation.'" *Id*. (citations omitted).  Nor does "the mere fact that litigation actually occurred."  *Id.* The second prong requires the Court to determine whether "'in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation.'"  *Id*. at 184 (quoting *In re Grand Jury Proceedings*, 604 F.2d 798, 803 (3d Cir. 1979).  "Documents created for other purposes that prove useful in subsequent litigation are not attorney work product; similarly, documents that are

routinely prepared in the ordinary course of business are outside the scope of work product

protection." *Id.*

With respect to the Benton Investigators' notes and summaries of their interviews with

Cicero, Sweeney, O'Shea and Dwyer, the Court finds that these documents are not protected by

the attorney-client privilege or work product doctrine.  In this regard, the Court finds that the

Benton Investigators' notes and summaries of their interviews were not prepared with the

primary purpose of litigation, but instead were prepared by CUMIS's representatives in the

ordinary course of CUMIS's business as part of CUMIS's investigation of Raritan Bay's claim to

coverage.  As such, they are not entitled to protection.  *American Home Assurance Co. v. United*

*States of America*, 09-258 (DMC), 2009 WL 3245445, *2 (D.N.J. Oct. 7, 2009).  Raritan Bay

may therefore obtain copies of the Benton Investigators' notes and summaries of their interviews

with Cicero, Sweeney, O'Shea and Dwyer, and may also question the Benton Investigators

regarding same.

To the extent CUMIS seeks to protect additional communications between CUMIS and

the Benton Investigators, the Court cannot evaluate CUMIS's requests without a proper privilege

log or a specific objection to a specific question.  Without knowing what specific documents are

being withheld, who created the documents, to whom the documents were sent and/or copied,

and the subject of the documents, the Court simply cannot determine whether a protective order

is warranted.  CUMIS is therefore instructed to provide Raritan Bay with a proper privilege log

no later than **November 22, 2010**.  If necessary, Raritan Bay may then raise specific objections to

particular documents being withheld by CUMIS.

**III.    Conclusion**

For the reasons stated above, CUMIS's motion for a protective order is granted in part and denied in part and Raritan Bay's cross-motion to amend its Complaint is granted in part and denied in part.  An appropriate Order follows.

Dated: October 21, 2010

                                    ___s/ Tonianne J. Bongiovanni_____
                                    **TONIANNE J. BONGIOVANNI**
                                    **United States Magistrate Judge**